FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 22, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HADLEY M.,[1] <br><br>                 Plaintiff, <br><br>      v. <br><br> KILOLO KIJAKAZI, Acting <br> Commissioner of Social Security, <br><br>                 Defendant. | No.    4:20-cv-5179-EFS <br><br> **ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND DIRECTING ENTRY OF JUDGMENT IN PLAINTIFF'S FAVOR** |

Plaintiff Hadley M. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom reports, the Court grants summary judgment in Plaintiff's favor, reverses the ALJ's decision, and remands this matter for further proceedings.

---

[1] To protect the privacy of the each social-security plaintiff, the Court refers to them by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

## I.    Five-Step Disability Determination

3

A five-step sequential evaluation process is used to determine whether an

4

adult claimant is disabled.[2] Step one assesses whether the claimant is engaged in

5

substantial gainful activity.[3] If the claimant is engaged in substantial gainful

6

activity, benefits are denied.[4] If not, the disability evaluation proceeds to step two.[5]

7

Step two assesses whether the claimant has a medically severe impairment

8

or combination of impairments that significantly limit the claimant's physical or

9

mental ability to do basic work activities.[6] If the claimant does not, benefits are

10

denied.[7] If the claimant does, the disability evaluation proceeds to step three.[8]

11

Step three compares the claimant's impairment or combination of

12

impairments to several recognized by the Commissioner as so severe as to preclude

13

substantial gainful activity.[9] If an impairment or combination of impairments

14

15

[2] 20 C.F.R. § 416.920(a).

16

[3] *Id.* § 416.920(a)(4)(i).

17

[4] *Id.* § 416.920(b).

18

[5] *Id.*

19

[6] *Id.* § 416.920(a)(4)(ii).

20

[7] *Id.* § 416.920(c).

21

[8] *Id.*

22

[9] *Id.* § 416.920(a)(4)(iii).

23

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[10] If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11] If the claimant can perform past work, benefits are denied.[12] If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13] If so, benefits are denied. If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] 20 C.F.R. § 416.920(d).

[11] *Id.* § 416.920(a)(4)(iv).

[12] *Id.*

[13] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[14] 20 C.F.R. § 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

2

## II.    Factual and Procedural Summary

On May 8, 2017, Plaintiff filed a Title 16 application alleging disability

beginning in 2015.[17] Her claim was denied initially and on reconsideration.[18] On

request, an administrative hearing was held before ALJ Mark Kim, who took

testimony from Plaintiff, the medical expert Ricardo Buitrago, Psy.D., and a

vocational expert.[19] After the hearing, the ALJ issued a decision denying Plaintiff's

disability application, finding:

- Step one: Plaintiff had not engaged in substantial gainful activity

  since the May 2017 application.

- Step two: Plaintiff had the following medically determinable severe

  impairments: lumbar degenerative disc disease, fibromyalgia, anxiety

  disorder, major depressive disorder, post-traumatic stress disorder

  (PTSD), and somatic symptom disorder.

- Step three: Plaintiff did not have an impairment or combination of

  impairments that met or medically equaled the severity of one of the

  listed impairments.

---

[17] AR 257–62. Because the application filing date starts the relevant period for a
Title 16 claim, the ALJ appropriately considered whether Plaintiff was disabled
beginning May 8, 2017.

[18] AR 179–82, 187–89.

[19] AR 89–147.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

- RFC: Plaintiff had the RFC to perform light work except:

  she can never climb ladders or scaffolds; occasionally stoop, kneel, crouch, crawl, or climb flights of stairs; she must avoid all exposure to unprotected heights; she can perform simple, routine tasks with a reasoning level of 3 or less; she can perform work with occasional job-related decision-making and occasional and simple changes in the work setting; and work involving only occasional and superficial interaction with the public and coworkers.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as production assembler, hand packager, and electronics bench worker.[20]

When assessing the medical-opinion evidence, the ALJ found:

- the reviewing testimony of Dr. Buitrago persuasive.

- the examining opinion of CeCilia Cooper, Ph.D., and the reviewing opinions of John Gilbert, Ph.D., and Matthew Comrie, Psy.D., partially persuasive.

- the treating opinion of Nancy Hillman, ARNP, and the reviewing opinion of Debra Baylor, M.D., not persuasive.

---

[20] AR 17–33.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were inconsistent with the medical evidence and other evidence.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to this Court and seeks relief on the grounds that the ALJ improperly evaluated Plaintiff's symptom reports and the medical opinions and failed to conduct an adequate step-three and step-five analysis.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[23] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[24] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25] Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court

---

[21] AR 25–26.

[22] AR 1–6.

[23] 42 U.S.C. § 405(g).

[24] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[25] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[26] The Court considers the entire record.[27]

Further, the Court may not reverse an ALJ decision due to a harmless error.[28] An error is harmless "where it is inconsequential to the ultimate nondisability determination."[29]

## IV.    Analysis

### A.    Plaintiff's Symptom Reports: The ALJ consequentially erred.

Plaintiff argues the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting her symptom reports. As is explained below, the Court agrees.

1.    Plaintiff's Symptom Reports

The ALJ summarized Plaintiff's symptom testimony as follows:

The claimant alleged experiencing pain whenever she stood or sat. She alleged she needed help when lifting anything over fifteen

---

[26] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[27] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.") (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[28] *Molina*, 674 F.3d at 1111.

[29] *Id.* at 1115 (cleaned up).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

> pounds. She alleged specific limitations in lifting, walking, standing, sitting, squatting, bending, reaching, kneeling, and stair climbing. She alleged she could only walk one city block. At the hearing, the claimant testified that she had triggers that would cause panic attacks. She testified that she experienced fibromyalgia pain all over, and that her medications did not relieve that pain.[30]

5

6

7

8

9

10

11

12

13

14

15

16

In addition to this summarized testimony, Plaintiff also testified that her panic attacks are triggered by smells or visual observations consistent with her prior trauma, that she gets anxious in crowds causing her to shut down or start crying, and that she gets frantic and cries when dealing with stress or unexpected changes.[31] She shared that when she drives a car she gets very anxious, causing her to breath heavily and sweat.[32] Plaintiff testified that the medication she takes for her fibromyalgia pain makes her sleepy but she does not sleep well.[33] She testified that her mother-in-law lives with Plaintiff, Plaintiff's husband, and their two kids and helps with the cleaning and dishes. In addition, Plaintiff stated that her husband cooks dinner and her grandfather comes over daily to help with the garbage and tidying.[34] Plaintiff reported that her energy and ability to concentrate and stay on task is impacted by her anxiety and pain and therefore she needs

17

18

19

20

21

22

23

---

[30] AR 25 (cleaned up).

[31] AR 113–15.

[32] AR 115–16.

[33] AR 117, 135.

[34] AR 118, 130.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

regular reminders from others to do and finish tasks and that on "bad days" she lies down for 30–90 minutes.[35] Plaintiff testified that her pain and anxiety symptoms wax and wane and that she also gets "knocked out with a migraine" about twice a month.[36]

    2.    <u>Standard and the ALJ's Findings</u>

       Because the record does not contain affirmative evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom reports after considering the relevant factors.[37] Factors to consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other

---

[35] AR 120, 125–27, 130–31.

[36] AR 122–26, 132–33, 136.

[37] *See* 20 C.F.R. § 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.[38]

Here, the ALJ discounted Plaintiff's reported mental and physical symptoms on the grounds that they were inconsistent with the objective medical evidence, Plaintiff's activities of daily living, and her "exceptionally weak work history."[39]

3.    Objective Medical Evidence

First, the ALJ discounted Plaintiff's reported mental symptoms because they were "not fully consistent with the available medical evidence of record."[40] Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms, as "contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."[41] Yet, the ALJ cannot discount symptom reports solely because they are not fully corroborated by the objective medical evidence.[42]

---

[38] 20 C.F.R. § 416.929(c); SSR 16-3p.

[39] AR 26.

[40] AR 26.

[41] *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); 20 C.F.R. § 416.902(k); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[42] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

       Here, the ALJ found that Plaintiff "has had occasional indications of distractibility or irritability but on the whole, her providers have generally reported normal findings with only occasional anxiety, and generally normal insight, judgment, concentration, thought content, and cognition."[43] In making this finding, the ALJ relied on several mental-health findings during appointments for physical conditions,[44] a practice that is discouraged when the record includes mental-health treatment notes.[45]

---

[43] AR 26 (cleaned up).

[44] *See* AR 26 (citing AR 427 (Jan. 2017: left knee injury); AR 433 (Nov. 2016: sore throat and headache); AR 549 (Dec. 2016: rheumatology appointment); AR 580 (Oct. 2018: rheumatology); AR 634 (March: 2018: upper respiratory illness); AR 650 (Feb. 2018: neck pain: speech and behavior normal)).

[45] *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *Orn v. Astrue*, 495 F.3d 615, 634 (9th Cir. 2007) (requiring examination notes to be read in their proper context); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports.  However, the purpose of those visits was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

When focusing on the mental-health treatment notes, such as from the medication-management appointments and the appointments for Plaintiff's anxiety and panic attacks, these records reflect that, consistent with Plaintiff's reported symptoms, her anxiety and resulting distractibility and irritability waxed and waned. The mental health notes indicate that although Plaintiff had generally normal thought content, cognition, and was cooperative, she was often observed as anxious and, after December 2018, progressively noted to be distractible and/or irritable.[46] As a whole, these records support Plaintiff's claim that her anxiety, distractibility, and irritability wax and wane:

- June 2016: anxious appearing although her memory was intact and concentration adequate in the setting, with fair judgment and insight.[47]

- Sept. 2016: reporting anxious mood that is improving; bright affect; organized thought process; and good attention, concentration, insight, and judgment.[48]

---

[46] *Ghanim*, 763 F.3d at 1164 (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

[47] AR 382.

[48] AR 389.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

- Aug. 2016: reporting anxious mood; congruent and bright affect, organized thought process, insight fair to good, and judgment good.[49]

- Aug. 2016: cooperative, reporting anxious mood, congruent affect, thought content included anxious themes, insight fair to good, and judgment good.[50]

- Dec. 2016: cooperative, reporting okay mood and poor energy, full range affect, insight fair to good, and good attention, concentration, and judgment.[51]

- Feb. 2017: cooperative, reporting anxious mood, affect mildly restricted, insight fair to good, and attention, concentration, and judgment good.[52]

- June 2017: exhibiting anxious and depressed mood with normal thought content.[53]

- Sept. 2017: mood appears anxious although not depressed, with normal behavior, and she is cooperative and pleasant.[54]

- Jan. 2018: mood appears anxious although not depressed and with normal thought content and behavior, and she is cooperative.[55]

- Feb. 2018: mood appears anxious but not depressed, normal behavior and thought content, and she is cooperative.[56]

---

[49] AR 397.

[50] AR 401.

[51] AR 404.

[52] AR 406.

[53] AR 546.

[54] AR 670.

[55] AR 653.

[56] AR 640.

- March 2018: mood and behavior normal.[57]

- May 2018: mood appears anxious, but not depressed, with normal behavior and thought content, and she is cooperative.[58]

- Oct. 2018: normal mood, affect, behavior, judgment, thought content, cognition, and memory.[59]

- Dec. 2018: anxious appearing, anxious and depressed mood, affect congruent to mood, tearful, ruminating and catastrophizing, distractible at times, but cooperative, friendly, with good insight, judgment, and recent and remote memory.[60]

- Feb. 2019: distractible, irritable mood, affect appropriate in the setting, and she is calm and cooperative with good judgment, insight, and memory.[61]

- March 2019: distractible with overwhelmed mood and down affect, although cooperative with normal thought process, intact memory, and good judgment and insight.[62]

- Aug. 2019: irritable mood, tired affect, and fair concentration.[63]

- Sept. 2019: some distraction, stressed-out mood, tired and down affect, okay fund of knowledge, and good insight and judgment except when in context of high anxiety, with intact memory and cooperative.[64]

---

[57] AR 629.

[58] AR 613.

[59] AR 589.

[60] AR 834.

[61] AR 840.

[62] AR 846.

[63] AR 945–48.

[64] AR 967.

- Oct. 2019: crying throughout appointment, distractible, depressed, and anxious with emotional dysregulation and congruent affect, although she was cooperative with appropriate behavior and fair to good insight and judgment when not exhibiting high anxiety and stress.[65]

The record also contains an August 2018 medical note that reflects Plaintiff became upset and yelled at staff and her own son when Plaintiff sought care for a painful wrist and was advised that there were no available appointments.[66] Plaintiff also informed Nurse Hillmer, who manages her medication, that her husband would not let her be home alone with the kids because of her irritability.[67]

Without more of an explanation by the ALJ as to why Plaintiff's reported difficulties with anxiety, distractibility, and irritability were inconsistent with the medical evidence of record, the ALJ's finding that Plaintiff "has had occasional indications of distractibility or irritability" is not a clear and convincing reason supported by substantial evidence to discount her reported waxing mental-health symptoms,[68] particularly from December 2018 onward.

4.    Activities of Daily Living

The ALJ discounted Plaintiff's allegation of disability because it was inconsistent with her level of daily activity. If a claimant can spend a substantial

---

[65] AR 986–90.

[66] AR 596.

[67] AR 829–30.

[68] *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

part of the day engaged in pursuits involving the performance of exertional or non-exertional activities, the ALJ may find these activities inconsistent with the reported disabling symptoms.[69] However, general findings as to activities and inconsistency are insufficient; "rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."[70]

Here, the ALJ highlighted Plaintiff reported 1) she "cleaned 'a lot' because her household included herself, her husband, her own children, and her husband's adult cousin and family, including two young children, two dogs, and a cat," 2) she and her husband raised chickens, 3) she did the laundry and dishes with accommodations, 4) she did vinyl crafts for 15–20 minutes at a time, and 5) she homeschooled her then three-year-old son, and her then one-year-old son had special needs.[71]

Without more explanation by the ALJ, these activities do not constitute clear and convincing reasons supported by substantial evidence to discount Plaintiff's reported allegations about her difficulties concentrating and staying on task,

---

[69] *Molina*, 674 F.3d at 1113.

[70] *Ghanim*, 763 F.3d at 1163 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring that an ALJ sufficiently explain why he discounted the claimant's symptom claims)).

[71] AR 26.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

particularly on days that her anxiety, depression, fibromyalgia, PTSD, and somatic symptom disorder flare. As the Ninth Circuit has emphasized, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[72] And the Ninth Circuit has repeatedly asserted, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."[73]

First, Plaintiff's comment during the psychological examination with Dr. Cooper about cleaning "a lot" must be read in the context of the other activities of daily living reported wherein she states that she needs help bathing and dressing, her husband cooks, she uses a grabber to get clothes out of the washer and dryer, she sits on a stool to wash dishes, her husband vacuums, and she naps with her children for 40–60 minutes per day, but she is still exhausted by 2:00 p.m. everyday.[74]

Second, without further explanation by the ALJ, that Plaintiff can engage in tasks that last relatively short periods of time, like caring for pets and chickens, doing the laundry and dishes (with accommodation for her physical limitations),

---

[72] *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017).

[73] *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

[74] AR 563–67.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

and crafts is not a clear and convincing reason supported by substantial evidence to discount her reported non-exertional symptoms. Moreover, consistent with Plaintiff's report that living with her husband's cousin's family was difficult, Plaintiff and her family transitioned to residing with her grandfather who helped out with household chores. And later when Plaintiff's grandfather moved out (but still came by daily to help tidy the house), Plaintiff's mother-in-law moved in to help with household chores.[75]

Finally, the ALJ failed to meaningfully explain how Plaintiff's care of her two young children is inconsistent with her reported symptoms given that she was able to nap with her children daily.[76]

The ALJ failed to meaningfully explain how these activities are inconsistent with Plaintiff's reported difficulties persisting and sustaining concentration and mood for a workday. On this record, Plaintiff's activities of daily living are not a clear and convincing reason supported by substantial evidence to discount her reported non-exertional symptoms.

5.    Prior Work History

The ALJ found that Plaintiff's "exceptionally weak work history" suggested that her unemployment was not related to her impairments.[77] While evidence of a

---

[75] *See, e.g.,* AR 118, 129–31, 833, 846, 965.

[76] AR 218, 433.

[77] AR 26.

poor work history may reflect that a claimant is not motivated to work,[78] the ALJ did not support his one-sentence finding with any analysis or supporting evidence.

Instead, the record reflects that Plaintiff attended two years of college and received a certification in phlebotomy and she worked part-time from 2006 to 2013.[79] These steps indicate a desire to improve her situation, rather than a lack of motivation, and consistent therewith Plaintiff expressed frustration during a psychological examination that she was not able to work and help with the family's finances.[80] Plaintiff also dealt with traumatic events in 2012 and 2015, as well as experienced the birth of her children in 2014 and 2016.[81]

      6.   <u>Consequential Error</u>

Because the ALJ did not articulate specific, clear, and convincing reasons to reject Plaintiff's reported symptoms, Plaintiff establishes the ALJ erred by discounting her mental symptom reports.[82] And this error was consequential.[83] If Plaintiff's reported unpredictable difficulties pertaining to concentration, focus,

---

[78] 20 C.F.R. § 416.929 (assessing work record); *see Thomas*, 278 F.3d at 959.

[79] AR 278–79.

[80] AR 564.

[81] AR 380–81, 563–64.

[82] Because the ALJ consequentially erred as to Plaintiff's mental symptoms, the Court does not address the ALJ's analysis of Plaintiff's physical symptoms.

[83] *Lingenfelter*, 504 F.3d at 1035.

avoidance, and mood are credited and included in the RFC, Plaintiff is unable to maintain competitive employment. The vocational expert testified that if an individual is off task 20 percent or more of the workday, is absent more than twice a month, is off task 30–90 minutes of the day, requires reminders every 30 minutes, frequently requests help from coworkers or supervisors, or lies down 20–90 minutes at work, then the individual is unable to sustain competitive employment.[84] Moreover, the ALJ's finding that the record "generally shows good concentration," impacted his assessment of the medical evidence, including Dr. Cooper's opinion and Nurse Hillmer's opinions.[85]

**B.     Remand for further proceedings.**

Plaintiff submits a remand for payment of benefits is warranted.

A district court "ordinarily must remand to the agency for further proceedings before directing an award of benefits."[86] The "credit-as-true" rule, on which Plaintiff relies, is a "rare and prophylactic exception to the ordinary remand

---

[84] AR 143–45.

[85] *See* AR 27 ("As already discussed, these notes do show some issues with occasional distractibility, irritability, and anxiety, but they do not document any significant deficits in insight, judgment, memory, abnormal thoughts, speech, though process, or fund of knowledge.").

[86] *Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017).

rule."[87] For the Court to remand for award of benefits, three conditions must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[88]

Here, the second and third conditions are met. The ALJ failed to provide legally sufficient reasons for discounting Plaintiff's symptom reports and, if Plaintiff's symptom reports are credited as true, she would be considered disabled. However, it is not clear whether her mental (and physical) symptoms wax to such an extent that she is unable to sustain employment during the alleged disability period. Further proceedings are necessary.

On remand, the ALJ is to supplement the record with recent medical records, reconsider the medical evidence and Plaintiff's symptom reports, and meaningfully reevaluate the sequential process. Because Plaintiff's somatic symptom disorder indicates a connection between Plaintiff's physical and mental symptoms, the ALJ is to reevaluate both Plaintiff's physical and mental symptoms.

---

[87] *Id.*

[88] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

In addition, the ALJ is to consider whether Plaintiff's mental conditions progressively worsened since the application was filed.[89]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 22**, is **GRANTED**.

2.      The Commissioner's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

3.      The decision of the ALJ is **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this order.

4.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

5.      The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 22nd  day of March 2022.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

---

[89] *Smith v. Kijakazi*, 14 F.4th 1108, 1112–13 (9th Cir. 2021) (requiring the ALJ to consider the progression of an impairment when assessing the claimant's symptom reports).